No. 2-25-0021 & 2-25-0075 cons.
Order filed June 23, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| *In re* THE MARRIAGE OF: | | |
| | ) | Appeal from the Circuit Court |
| SEAN HEAVER, | ) | of McHenry County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 17-DV-525 |
| | ) | |
| CHRISTINE HEAVER, | ) | Honorable |
| | ) | Jeffrey L. Hirsch, |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices McLaren and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court properly found a substantial change in circumstances and did not err in considering Christine's post-divorce conduct or in concluding that Sean met his burden to modify the Allocation Judgment.

¶ 2    Respondent-Appellant, Christine Heaver, argues that the trial court erred when it granted Petitioner-Appellee, Sean Heaver's, petition to modify for three reasons. First, she contends that the plenary order of protection ("OP") entered on April 13, 2020, did not amount to a substantial change of circumstances under Section 610.5 of the Illinois Marriage and Dissolution Act ("the Act"). Next, she maintains that the court improperly relied on evidence of Christine's mental health

in determining that a change in circumstances occurred. She further claims that Sean failed to plead or prove a change of circumstances in his motion to modify. Finally, Christine urges this court to reverse the trial court's appointment of a parenting coordinator on February 24, 2025. We affirm.

¶ 3                                                  I. BACKGROUND[1]

¶ 4     The parties were divorced on March 18, 2019. The Judgment for Dissolution of Marriage included an Allocation Judgment resolving the parties' decision-making and parenting time with respect to their minor child, B.H.. In December 2019, Christine called police to her house. Upon their arrival, she related that Sean had stabbed her and absconded with B.H. Police rushed to Sean's house and placed him into custody. It soon became apparent, however, that Christine's story was unfounded. In response to this incident, Sean filed a Petition for an Order of Protection against Christine. The trial court entered an emergency order of protection against Christine, naming Sean and B.H. as protected parties. After hearing, the trial court converted this emergency order into a plenary OP. Under the OP, Sean received temporary custody of the minor child, while Christine's parenting time was limited. The trial court modified the OP on several occasions to grant Christine more parenting time. The first of these modifications came on December 18, 2020. This was followed by five modifications in 2021, coming on February 8, March 19, May 5, June 10, and November 12, 2021.[2]

¶ 5     Meanwhile, in January 2020, Sean filed a petition to modify the Allocation Judgment. This petition alleged that Christine had systematically attempted to destroy the relationship between

---

[1] There are two cases consolidated for decision: 2-25-0021 and 2-25-0075. They share this background.

[2] Christine's brief alleges that the court entered a further order modifying parenting time on April 24, 2023. We can find no support for this in the record, and the portion that to which Christine cites is inapposite.

Sean and B.H. by staging the stabbing incident as well as by making false accusations of abuse to doctors, police officers, and state officials. After a prolonged legal process, during which the trial court appointed the minor child a *guardian ad litem* ("GAL"), the parties proceeded to trial in late 2023.

¶ 6　　At trial, GAL John Nye testified regarding various behaviors by Christine that he believed were detrimental to the minor child's well-being. Per the GAL, when Christine had B.H., she refused to take him to his scheduled extracurriculars, perceiving that these activities interfered with her parenting time. She changed B.H.'s pediatrician without consulting Sean and gave B.H. medicine that the doctors thought unnecessary. She trained B.H. to accuse his father of abuse without basis and, rather than help B.H. with his assigned schoolwork, gave him her own homework. It was the GAL's belief that Christine was teaching B.H. to be antisocial, untruthful, and adversarial. He recommended that Sean have exclusive decision-making authority regarding B.H.'s education, medical care, and extracurricular activities, as well as a greater share of the parenting time.

¶ 7　　On December 20, 2024, the trial court granted Sean's petition to modify. In its memorandum opinion, the trial court found that the plenary order of protection constituted a substantial change of circumstances under the Act and, after a thorough application of the "best interest" factors under Sections 602.5 and 602.7, determined that the circumstances warranted modification of both decision-making power as well as parenting time. The trial court entered a separate order modifying the Allocation Judgment consistent with its findings. Christine filed a timely notice of appeal on January 16, 2025. Consistent with its December 20, 2024 opinion, the trial court appointed a parenting coordinator on February 24, 2025. Pursuant to the parenting coordinator's appointment, Chistine filed a second notice of appeal on February 26, 2025.

¶ 8                    II. ANALYSIS FOR 2-25-0075

¶ 9      Prior to discussing Christine's arguments, we address the timeliness of our decision. Pursuant to Illinois Supreme Court Rule 311(a) (eff. July 1, 2018), this case is "accelerated," because it involves a matter affecting the best interests of a child. With respect to such cases, Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018) provides that "[e]xcept for good cause shown, the appellate court shall issue its decision within 150 days after filing of the notice of appeal." Christine filed her first notice of appeal on January 16, 2025. Thus, the 150-day period to issue our decision expired on June 16, 2025. We note, however, that Christine filed a second notice of appeal on February 26, 2025. She filed her second, mostly identical, brief on April 23, 2025. Sean moved to strike this brief on April 29, 2025. This motion was taken with the case, and Sean filed his brief on May 21, 2025. Christine, in turn, filed a reply brief on May 30, 2025. Christine also requested and received an extension of time to file her first brief on April 3, 2025. Because this case was not ready for disposition until May 30, 2025, we find good cause for issuing our decision after the 150-day deadline. See *In re B'Yata* I., 2013 IL App (2d) ¶ 26 (finding good cause when the final brief was not filed until shortly before the 150-day deadline).

¶ 10                 A. Motion to Strike Christine's Second Brief

¶ 11    At the outset, we address Sean's motion to strike Christine's second brief. Sean filed this motion on April 29, 2025, and we ordered it taken with the case on May 12, 2025. Illinois Supreme Court Rule 341(eff. Oct. 1, 2020) governs the filing of appellate briefs. Rule 341 is not a limitation upon the jurisdiction of a court of review but only an admonishment of the parties. *Swanson v. Board of Police Commissioners*, 197 Ill.App.3d 592, 597 (2d Dist. 1990). The primary factor in deciding whether to impose the harsh penalty of striking a brief is whether a

party's failure to comply with Rule 341 hinders our review. *Steven W. v. Meeli W.* 2021 IL App (2d) 200652 ¶ 39. We agree with Sean that Christine's second brief is deficient. It reargues all issues presented in her first brief, sometimes lifting the language from the first brief verbatim, and at other times modifying the arguments. We decline to consider any portions of Christine's second brief that merely repeat or revise arguments raised in her initial submission. See *id*. (The court may ignore non-compliant sections of the brief).

¶ 12    What remains of the second brief, therefore, is Christine's contention that the trial court erred by appointing a parenting coordinator pursuant to Illinois Supreme Court Rule 909. It is Christine's burden, as appellant, to affirmatively establish error in the proceedings below. *In re Alexander R.*, 377 Ill. App. 3d 553, 557 (2007). "A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented, and it is not a repository into which an appellant may foist the burden of argument and research; it is neither the function nor the obligation of this court to act as an advocate or search the record for error." *Orbert v. Saville*, 253 Ill. App. 3d 677, 682 (1993) (internal citations omitted). "Mere contentions, without argument or citation to authority, do not merit consideration on appeal." *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 12.

¶ 13    In this portion of the brief Christine makes no attempt to argue her position. Instead, she repeats substantial portions of her earlier argument concerning whether there existed a substantial change of circumstances to justify modification. Christine makes no attempt to apply these arguments to the issue of the parenting coordinator's appointment, and this court will not do so on her behalf. Accordingly, Christine has forfeited this argument.

¶ 14    For the above reasons, Christine's failure to abide by the provisions of Rule 341 precludes us from considering any portion of second brief on its merits. Accordingly, we grant

Sean's motion to strike Christine's second brief in its entirety. See *Taake v. WHGK*, *Inc*. 228 Ill.App.3d 692, 714 (2d. Dist. 1992) (court will deny a motion to strike if it is able to review the merits of the appeal.)

¶ 15                    III. ANALYSIS FOR 2-25-0021

¶ 16            A. Whether a Substantial Change of Circumstances Occurred

¶ 17    At the trial level, it was Sean's burden to prove by a preponderance of the evidence that, on the basis of facts that have arisen since the entry of the existing parenting plan or allocation judgment or were not anticipated therein, a substantial change has occurred in the circumstances of the child or either parent. 750 ILCS 5/610.5(c). If the facts establish a substantial change, the court then asks whether a modification is necessary to serve the child's best interests. 750 ILCS 5/610.5(c).  In determining the child's best interests, the court must consider all relevant factors, including, without limitation, those listed under 750 ILCS 5/602.5(c).  These factors include: (1) the child's wishes, (2) the child's adjustment to his home, school, and community, (3) the mental and physical health of all individuals involved, (4) the ability of the parents to cooperate, or their level of conflict, (5) the level of each parent's participation in past significant decision-making, (6) any prior agreement or course of conduct between the parents, (7) the parent's wishes, (8) the child's needs, (9) the distance between the parent's residences, the cost and difficulty of transporting the child, each parent and the child's daily schedule, and the parent's ability to cooperate, (10) whether a restriction on decision making is appropriate under Section 603.10 (relating to Parenting Plans), (11) the willingness and ability of each parent to facilitate a close an continuing relationship with the other parent, (12) physical violence or the threat of physical violence against the child, (13) the occurrence of abuse against the child or another member of the

household, (14) whether either parent is a sex offender, and finally (15) any other factor that the court deems relevant. 750 ILCS 5/602.5(c) (cleaned up).

¶ 18    "A reviewing court will not disturb a circuit court's ruling on the allocation of decision-making responsibilities unless that decision is against the manifest weight of the evidence." *Jameson v. Williams*, 2020 IL App (3d) 200048, ¶ 47. "A decision is against the manifest weight of the evidence when an opposite conclusion is apparent or when the court's findings appear unreasonable, arbitrary, or not based on evidence." *In re Marriage of Verhines*, 2017 IL App (2d) 171034, ¶ 51. The circuit court need not make explicit findings as to every factor, so long as the record reflects that evidence of the factors was considered by the trial court. *In re Marriage of Diehl*, 221 Ill. App. 3d 410, 424 (1991).

¶ 19    At the outset, we discuss Christine's contention that the facts giving rise to the plenary OP did not amount to a substantial change of circumstances under the Act. We confess that we found this argument very difficult to follow. Christine appears to claim that the interim modifications to the plenary OP preclude a finding that the OP amounted to a substantial change of circumstances under Section 610.5 of the Act. In support, Christine cites to *In re Marriage of Burns*, 2019 IL App (2d) 180715, ¶ 26. This paragraph of *Burns*, however, merely paraphrases the language of Section 610.5; it lends no support to Christine's theory.

¶ 20    Section 610.5 of the Act refers to modifying an allocation judgment due to a substantial change of circumstances. This change of circumstances must be based upon "facts that have arisen since the entry of the parenting plan or allocation judgment." 750 ILCS 5/610.5(c). Nothing in the section indicates that a substantial change of circumstances, once existing, can be "clawed back" by subsequent modifications to parenting time. Furthermore, even with the interim modifications, the plenary OP still represented a substantial departure from affairs as they existed under the 2019

allocation judgment. Given that the OP's modifications to custody and parenting time went directly to which parent was providing for the child's needs, we agree with the trial court that Sean met his burden as to this point. See *In re Marriage of Davis*, 341 Ill. App. 3d 356, 359 (2003) ("The change in circumstances must directly affect the needs of the child."), see also *Bedford v. Bedford*, 2024 IL App (2d) 230296-U.

¶ 21　　　　B. Whether the Trial Court Improperly Considered Christine's Mental Health

¶ 22　Christine argues that the court wrongly considered her mental health issues in its decision to find a substantial change in circumstances. Christine asserts this was in error because these challenges predated the parties' divorce and, therefore, the allocation judgment. The trial court, however, did not do what Christine accuses it of doing. In its memorandum opinion, the trial court dedicates precisely one paragraph to discussing Christine's mental health. It does so in its analysis of a best interest factor under section 602.5 of the Act, which requires the court to consider "the mental and physical health of all individuals involved." 750 ILCS 5/602.5(c)(3). Had the trial court *failed* to analyze this factor, it would have been in error, and no doubt Christine would have presented it as such.

¶ 23　The trial court's decision relied instead on detailed information about Christine's *behavior* since the divorce. This behavior included her unfounded accusations against Sean, her unilateral actions concerning B.H.'s education, health, and activities, and her general refusal to foster a healthy relationship between B.H.and his father. While these behaviors may ultimately originate from Christine's pre-divorce mental health struggles, it is inaccurate to claim that these specific actions pre-date the Allocation Judgment. Accordingly, the trial court's consideration of these facts was not in error.

¶ 24　　　　　　D. Whether Sean Carried His Burden

¶ 25    Christine next argues that Sean failed to properly plead or prove the allegations contained in his motion to modify. Specifically, she alleges that Sean's motion failed to allege any change of circumstances since the entry of the allocation judgment in March of 2019. The record flatly contradicts this claim. Starting on its first page, the Motion to Modify recounts in detail the alleged fake-stabbing incident, which occurred a full nine months *after* the Allocation Judgment's entry on March 18, 2019. The motion further alleged that *since* the parties' divorce, Christine had made unfounded accusations against Sean to doctors, the police, and state services, all to undermine Sean's relationship with B.H.

¶ 26    Sean's burden was to prove the above accusations by a preponderance of the evidence, a relatively low threshold. After an extensive trial, which consisted of testimony from the GAL, police witnesses, and the parties themselves, the trial court found that he had met this burden. It based this decision, largely, on the credibility of the witnesses. Specifically, it found that the GAL's investigation was "thorough and discerning" and "corroborated by substantive evidence offered at the hearing." In contrast, it observed that Christine "held fast to unfounded accusations" against Sean. Given that it is the trial court's province to analyze the credibility of witnesses, we will not disturb its determination. *In re Marriage of Bates*, 212 Ill.2d 489, 516 (2004) ("the trial court is in a superior position to judge the credibility of the witnesses and determine the best interests of the child.")  It was therefore not against the manifest weight of the evidence to find that Sean had carried his burden.

¶ 27                                    IV. CONCLUSION

¶ 28    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 29    Affirmed.